IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT HARRY NEESON, | ) | Case No. 07-20604 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| ROBERT HARRY NEESON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 07-2039 |
| | ) | |
| SALLIE MAE, INC., UNITED | ) | |
| STATES DEPARTMENT OF | ) | |
| EDUCATION AND EDUCATIONAL | ) | |
| CREDIT MANAGEMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

In this adversary proceeding, plaintiff Robert Harry Neeson ("Debtor") seeks a determination pursuant to 11 U.S.C. § 523(a)(8) that his student loan debt owed to defendant Educational Credit Management Corporation ("ECMC" or "Defendant") should be discharged because excepting the debt from discharge would impose upon him an undue hardship. This is a core proceeding of which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and which it may hear and determine pursuant to 28 U.S.C. § 157(a), 157(b)(1) and 157(b)(2)(I). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's student loan debt is dischargeable pursuant to

§ 523(a)(8).

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case was tried on the basis of an oral stipulation of facts, stipulated exhibits and the testimony of Debtor. He seeks a discharge of his liability on a consolidated student loan evidenced by a promissory note executed on April 17, 2001, in the amount of $17,831.65. Defendant's Ex.11, para. 4. The balance on that indebtedness as of January 13, 2008, was $29,499.73. Defendant's Ex. 11, para. 8. The loans consolidated into this promissory note represent amounts advanced over a period from 1982 through 1995 for courses taken by the Debtor at various institutions in an attempt to obtain a degree in the ministry field. The parties have stipulated that Debtor made no progress toward a degree and that his educational efforts have not been helpful to him in securing employment. The Debtor apparently stopped taking college courses in approximately 1995 after accumulating 17 hours with an average grade point of approximately 1.3.

Debtor is a 44-year-old man with no dependents who lives alone. He served in the United States military, but was discharged in 1991 after an evaluation during which he was diagnosed as having a personality disorder. That evaluation also identified a cognitive disorder and revealed that Debtor's IQ is in the low average range (specifically, rated from 80 to 90 with average IQ being approximately 100). He is currently employed by Wal-Mart where he has worked since April 2003 managing their shopping carts. He testified that although he has applied for other positions there, he has not been permitted to interview for them. His history includes previous employment at menial positions in the food service industry from all of which he was terminated. The parties stipulated that there is no likelihood of any significant increase in salary in his present position or of his obtaining a significantly better employment which would offer the prospect of higher salary.

As a matter of fact, he is currently on a one year probation at Wal-Mart, of which he has served two months, for having run a shopping cart into one of its customers.

Debtor made a few payments in small amounts on his loans prior to consolidation in 2001. Since that time, he has received some forbearances and deferments, but has made no payments on the loan after consolidation.

## II.  DISCUSSION

### A.  Applicable Legal Principles on Determination of Undue Hardship

Debtor contends that it would be an undue hardship for him to repay the remaining amount due on his student loan.  Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or his dependents.  The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001); *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981).  Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the "totality of the circumstances" test.  *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).  In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable, necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case.  *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676.  The principal inquiry is to determine whether "the debtor's reasonable future financial

resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his student loan without reducing what the debtor and his dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

There is no precise formula for, or statutory definition of, what constitutes a "minimal standard of living." On one end of the spectrum, it is clearly not enough for a debtor simply to demonstrate that payment of a student loan would require a readjustment of his financial situation or a diminution in lifestyle. *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 817 (N.D. Fla. 2003). A debtor is therefore not entitled to maintain the standard of living enjoyed before the filing of the petition. *See Stanley*, 300 B.R. at 817. On the other hand, it is not necessary that a debtor live in abject poverty in order to demonstrate undue hardship and obtain a discharge of student loans. *See Stanley*, 300 B.R. at 818. A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment. *Gill v. Nellnet Loan Services, Inc. (In re Gill)*, 326 B.R. 611, 627 (Bankr. E.D. Va. 2005); *see also Myers v. Fifth Third Bank (In re Myers)*, 280 B.R. 416, 421-422 (Bankr. S.D. Ohio 2002) (minimal standard of living includes the following elements: shelter, utilities, food and personal hygiene, clothing, health insurance or ability to pay medical and dental expenses and recreation).

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination including: (1) total present and future

incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *VerMaas v. Student Loans of North Dakota (In re VerMaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

### B. Analysis of the Totality of the Circumstances

#### 1. Past, Present and Reasonably Reliable Future Financial Resources

The Court must first consider the Debtor's past, present and reasonably reliable future financial resources. As noted above, the Debtor presently works at Wal-Mart, where he puts in approximately 33-37 hours per week at an hourly rate of $7.96. His pay stubs indicate that his gross income for the year 2007 was approximately $17,080.75 with a net income of $12,971.86. Based upon these records and his deposit account records, his average net monthly income is approximately $1,070.00. He received some bonus and holiday pay in the year 2007, although the amount of the bonus was not specified. His tax returns indicate that his adjusted gross income was $14,300.00 in 2005 and $14,400.00 in 2006. There is no dispute that this represents what the Debtor currently has available on a monthly basis to pay his expenses and make payments on the student

loan.

As noted above, the parties have stipulated that it is unlikely that the Defendant will receive any significant wage increase or that he will be placed in a more responsible and higher paid position at Wal-Mart. Similarly, the evidence, his experience at Wal-Mart and his prior employment history and income suggest that it is equally unlikely that the Debtor will find a position elsewhere, which he can retain, which will offer a higher level of net income. Indeed, Debtor is fearful that he may lose his current position as a result of his probation. The Debtor's fear is not altogether unfounded as reflected by his previous employment history. It is therefore likely, that even at this meager level, the Debtor's net income has been maximized.

## 2. Debtor's Reasonable and Necessary Living Expenses

Debtor's Schedule J shows expenses of $894.71 per month. At that level, he would appear to have excess monthly net income of approximately $175.00 per month. In addition, ECMC points out that his home loan is scheduled to mature in approximately two years reducing his monthly expenses by another $102.00. The required monthly payment on the consolidated loan is $196.48, an amount which is not available based upon the Debtor's present budget. As this Court has noted before, however, it must also take into consideration repayment options which are available to the Debtor. *In re Bray*, 332 B.R. 186, 189 (Bankr. W.D. Mo. 2005); *Pollard v. Superior Community Credit Union (In re Pollard)*, 306 B.R. 637, 653 (Bankr. D. Minn. 2004); *Rose v. United States Department of Education (In re Rose)*, 227 B.R. 518, 525-26 (W.D. Mo. 1998), *aff'd* 187 F.3d 626 (8th Cir. 1999) (bankruptcy court had to consider debtor's ability to repay, not just over original term of loan, but over 25-year term available as refinancing options). Debtor is eligible for participation in Income Contingent Repayment Plan under which his payments on the consolidated loan would

be based on his adjusted gross income, with his payment amount subject to reevaluation each year he was in the program. The evidence is that the Debtor's initial payment under the ICRP would be $96.51 per month, a sum which would appear to be available to him based upon his income and the expenses listed on his Schedule J.

In response, Debtor makes a number of points about his expenses. First, the Debtor's listed expenses are quite reasonable. Indeed, to say that the Debtor lives modestly would be a significant understatement. Second, the Debtor testified that he has a number of needs that are not being met because he lacks the income with which to do so. Specifically, Debtor testified that he presently gets to and from his job by taking taxi cabs, which apparently comprises the bulk of his $100.00 per month transportation expense. He has expressed a desire to own an automobile, a payment on which would obviously exhaust his present net monthly income and probably do so even after the maturity of his home loan. In addition, Debtor testified as to other needs he is not able to meet with present income. In particular, the city is apparently threatening to condemn his home because it needs repainting and electrical work, needs which are not likely to be met from whatever the reserve he might accumulate as a result of his $20.00 monthly home maintenance allowance. His monthly clothing expense is $20.00 per month. At that rate, he would need to save for at least two months to merely replace a pair of the tennis shoes he testified he goes through quickly in his cart handler position at Wal-Mart. Although as a veteran his medical expenses are taken care of by the government (a fact which explains the absence of an entry on the line for medical and dental expenses on Schedule J) he testified that optometry services are not covered by the Veterans Administration and that he has had the same prescription for ten years. The Court also notes that he lists a meager monthly recreation allowance in the amount of only $20.00. He testified at the

7

hearing that although his utilities are listed as totaling approximately $205.00 per month, his invoices for those utilities in the month prior to trial were in excess of $350.00 and he does not know how the additional amount will be paid. Finally, Debtor also testified that because he has been unable to meet his monthly expenses with his existing income, he was required to live on his credit cards incurring several thousand dollars of credit card debt, listed in his Schedules of Assets and Liabilities. This confirms the Court's suspicion that his expenses are actually higher than the $895.00 listed and that he has not been able to meet basic needs with his current income. It also affirms this Court's conclusion that he lacks the funds necessary to make even the payment offered by the Income Contingent Repayment Plan of less than $100.00 per month, a situation which is not likely to change in the foreseeable future.

### 3. Other Relevant Facts and Unique Circumstances

The Court concedes that there are some facts which would tend to favor denying discharge of the student debt. Debtor is relatively young and has no dependents. Although he has medical expenses, they are for the most part paid for him by treatment provided for him through the Veteran's Administration. A cursory examination of his income and expenses reflects that he may have sufficient net income to make the payment prescribed by the ICRP, one of the payment options available to him. In addition, he has made few payments on his various student loans and none since his loans were consolidated.

On the other hand, many of the other facts support a finding that repayment of the student debt would constitute an undue hardship. Despite numerous attempts over a period spanning more than 12 years, the Debtor made no progress toward a degree and his limited educational achievements have not had and are unlikely to have any significant benefit to him in obtaining

employment. Debtor's limited intelligence and diagnosed medical conditions limit his employment prospects and have affected his ability to retain even a lower level position as reflected by his tenuous employment history. Although he has been employed in his current position for four years, even that is now threatened by his probation. Defendant points at the continuity of this recent employment and suggests that increased caution on the Debtor's part during the probation is likely to preserve his position. The Court could just as easily draw the opposite conclusion based upon his prior employment history. Consequently, it is almost certain that the Debtor's income will not increase to any significant extent and he may not retain his present employment. Even if he does so, his income level in the future may be more akin to what he earned in 2005 and 2006 since his income for 2007 was augmented by a bonus to which he will not necessarily be entitled in future years.

Debtor's expenses are, as noted above, even less than modest. Even if the Court does not factor in payment on an automobile loan, his expenses in each category are at or below what one might reasonably expect, particularly, for example, in the areas of recreation and clothing allowance. His other testimony established that his allowance levels have not permitted him to take care of existing needs such as in areas of home maintenance, utilities and optometry care. His demonstrated need to draw on credit card debt to fund his daily needs reaffirms the inadequacy of his income to pay such expenses, much less make payments on his student loan.

For all the above reasons, the Court finds that the repayment of Debtor's student loan indebtedness to ECMC would impose an undue hardship on him pursuant to 11 U.S.C. § 523(a)(8) and it is therefore dischargeable. It is therefore

ORDERED that the indebtedness owed by Debtor to ECMC be discharged pursuant to 11

U.S.C. § 523(a)(8).

      A separate order will be entered in accordance with Bankruptcy Rule 9021.

DATED:    February 12, 2008                     /s/ Dennis R. Dow
                                                   HONORABLE DENNIS R. DOW
                                                   UNITED STATES BANKRUPTCY JUDGE

Copies to:
Elizabeth A. Keller
N. Larry Bork